## EINAR J. JEPPESEN v. GILBERT SWANSON AND ANOTHER, INDIVIDUALLY AND *d.b.a.* SWANSON EXCAVATING COMPANY.[1]

February 11, 1955.

No. 36,414.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *David W. Nord,* for relators.

*William H. DeParcq* and *Donald T. Barbeau,* for respondent.

*Wright W. Brooks, amicus curiae.*

KNUTSON, JUSTICE.

This proceeding arises out of an action for personal injuries brought by plaintiff against defendants. The complaint alleges that an employee of defendants negligently drove a truck owned by defendants which struck plaintiff. Substantial personal injuries are claimed. Defendants interposed an answer admitting ownership of the truck and the relationship of employer but denied the occurrence of the alleged accident. The answer also contains an affirmative defense of contributory negligence and puts plaintiff to his proof as to damages.

---

[1]Reported in 68 N. W. (2d) 649.

After issue was thus joined, plaintiff, through his attorneys, moved the district court for an order permitting him to inspect the policy of liability insurance in effect on defendants' truck at the time of the alleged accident under Rule 34 of the Rules of Civil Procedure. This motion was accompanied by an affidavit of one of plaintiff's attorneys stating that, before plaintiff and his attorneys can properly evaluate a figure for settlement or trial, it is necessary that they know the policy limits on defendants' truck and that defendants have refused to give them this information. The trial court granted plaintiff's motion and ordered the production of the insurance policy.

The portion of the affidavit which states the reasons for the desired disclosure reads as follows:

"That before plaintiff and his attorneys can properly evaluate a figure for either settlement or trial that would properly dispose of this matter, it is necessary that the plaintiff be apprised of the policy limits in force and effect on defendant's motor vehicle at the time of the occurrence herein."

On oral argument, counsel for plaintiff, with commendable frankness, admitted that the only purpose the information sought under this discovery could serve would be to assist plaintiff in evaluating his case for the purpose of settlement. Thus, the question is squarely presented to us whether disclosure may be had under Rule 34, as limited by Rule 26.02, of the amount of liability insurance carried by a defendant in a personal injury action for the sole purpose of assisting plaintiff in evaluating his case for the purpose of effecting a settlement.

The trial courts of this state are divided on the question. In order to establish uniformity among our courts, we issued our alternative writ of prohibition so that the matter could be expeditiously determined.

Rule 34 of the Rules of Civil Procedure is identical with the federal rule.[2] It reads as follows:

[2]See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 181.

"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30.02, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26.02 and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by Rule 26.02. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

The scope of the discovery permitted is the same as that provided by Rule 26.02 for taking depositions.[3] Rule 26.02 is identical with Federal Rule 26(b) except for the addition of the last sentence.[4] Rule 26.02 reads as follows:

"Unless otherwise ordered by the court as provided by Rule 30.02 or 30.04, the witness may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. The produc-

[3]See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 181.
[4]See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 23.

tion or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial, or of any writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 35, the conclusions of an expert, shall not be required."

At the outset we must bear in mind that the rules of civil procedure were adopted pursuant to authorization granted by the legislature. L. 1947, c. 498. The enabling act itself prescribed the limits beyond which we may not go. The title of the act reads:

"An act authorizing the supreme court to regulate by rules the pleading, practice, and procedure in civil cases in all the courts of this state."

Section 1 provides:

"The supreme court of this state shall have the power to *regulate the pleadings, practice, procedure,* and the forms thereof in civil actions in all courts of this state, other than the probate courts, by rules promulgated by it from time to time. Such rules shall not abridge, enlarge, or modify the substantive rights of any litigant." (Italics supplied.)

It is obvious that our power under this act is limited to the regulation of "pleadings, practice, procedure, and the forms thereof in civil actions."

Within the scope in which they operate, the rules should be given liberal construction so as to effectuate the purpose for which they were adopted. Rule 1 provides:

"These rules govern the procedure in the district courts of the State of Minnesota in all suits of a civil nature, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action."

There are, however, and must be some boundary limitation beyond which we should not go. In Hickman v. Taylor, 329 U. S. 495, 507, 67 S. Ct. 385, 392, 91 L. ed. 451, 460, the United States Supreme Court said:

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. *The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it,* thus reducing the possibility of surprise. But *discovery, like all matters of procedure, has ultimate and necessary boundaries.*" (Italics supplied.)

At the time these rules were adopted the discovery and pre-trial sections were most vigorously opposed by members of the bar, who feared that they would be abused. It is obvious from the divergent views of trial courts that these rules have been the most difficult to administer. In the Hickman case the court had before it a case involving an attempt to compel disclosure of the so-called "work product" of an attorney. With respect to the scope of the discovery rule, the court said (329 U. S. 500, 67 S. Ct. 388, 91 L. ed. 457) :

"The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role *in the preparation for trial*. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, *relative to those issues*. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is

now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." (Italics supplied.)

The question now before us is one of first impression in this court. There is not a great deal of authority elsewhere. It is apparent that our trial courts, as well as the federal trial courts, are not in agreement on the subject. Many of the authorities relied upon by the trial court in this case and other courts are distinguishable on the facts. One of the cases most frequently cited is Orgel v. McCurdy (S. D. N. Y.) 8 F. R. D. 585. While the facts are not stated too clearly in that case, it seems apparent that one of the issues involved was whether defendant was operating and controlling the automobile involved in the accident. Apparently plaintiff sought to establish that fact by showing that defendant carried liability insurance. The court required the disclosure but, in so doing, said:

"* * * Defendant also asserts that the plaintiff 'by seeking to examine the defendant Garford on the issue of liability insurance, is attempting to spell out operation and control from the fact of insurance liability coverage, when, as a matter of fact, whether the defendant Garford had liability insurance coverage on the vehicle in question at the time of the accident would depend on whether the said motor vehicle was under its operation and control.'

\* \* \* \* \*

"The information sought by an examination must be relevant to the subject matter of the pending action. * * * Under Federal Rules of Civil Procedure, rule 26(b), 28 U. S. C. A., it is not necessary to establish the admissibility of the testimony; it is sufficient that the inquiry be made as to matters generally *bearing on the issue* and relevant thereto. * * *

\* \* \* \* \*

"* * * the motion is granted because the testimony plaintiff seeks may be generally relevant to the issues in the case." (Italics supplied.)

In Brackett v. Woodall Food Products, Inc. (E. D. Tenn.) 12 F. R. D. 4,[5] the court permitted the disclosure of insurance. Apparently the court based its decision upon the view that such liability insurance was relevant to the subject matter of the litigation, following Orgel v. McCurdy, *supra*.

The same question came before the federal court in McClure v. Boeger (E. D. Pa.) 105 F. Supp. 612. There the court came to the opposite conclusion from that in the Brackett case. Chief Judge Kirkpatrick said (105 F. Supp. 613):

"I am unable to arrive at the conclusion which Judge Darr reached in the case cited [the Brackett case] that information relating to the amount and terms of the defendant's public liability insurance is properly obtainable either by means of interrogatories or under Rule 34, upon the sole statement that it may afford the plaintiff 'rights' not otherwise available. Some liability policies have endorsements providing for payment of injured passengers' medical expenses, but any right of that kind which the plaintiff might have arises out of contract, is entirely different from the right which she is asserting against this defendant and cannot affect the position of either party in this suit.

"I can see certain advantages to the plaintiff in knowing the extent of the defendant's coverage in an accident case, at least in a case where the defendant is otherwise judgment proof and the policy is the plaintiff's only resort for a recovery. For example, it might help the plaintiff to determine whether or not to accept an offer of settlement or to decide how much expenditure of time and money by way of preparation the case justified. However, every argument that could be made in favor of requiring the disclosure could also be made in favor of compelling a defendant in any civil case, tort or contract, to furnish the plaintiff with full information as to his financial resources, and, in the case of an individual, as to the extent of his private fortune.

---

[5]For a criticism of this decision, see 32 Neb. L. Rev. 106; 5 Stanford L. Rev. 322, 325.

"Of course, the fact that the information would not be relevant and that the fact of liability insurance could not be introduced at the trial does not necessarily forbid discovery, but *whatever advantages the plaintiff might gain are not advantages which have anything to do with his presentation of his case at trial and do not lead to disclosure of the kind of information which is the objective of discovery procedure.* I think that to grant this motion would be to unreasonably extend that procedure beyond its normal scope and would not be justified." (Italics supplied.)

Other federal cases[6] touching on this and related subjects could be cited, but about the only conclusion we can come to from an examination of the federal cases is that the courts are not in complete agreement.

The rationale of the great bulk of federal cases dealing with the discovery rules is that the information sought by discovery must either be admissible on a trial of the issues involved in the case or it must be such facts or information as will lead to the discovery of evidentiary information in some way related to the proof or defense of issues involved in the trial of the case.[7]

Apparently the only case to reach a state court of final resort involving the precise question now before us is Maddox v. Grauman (Ky.) 265 S. W. (2d) 939. That case arose under a rule similar to ours and to the federal rule. With respect to the scope of the rule the court said (265 S. W. [2d] 941):

"* * * The Rule extends the scope of the examination to a nonparty witness as well as to an adverse party. Some of the main purposes of this particular Rule are to permit, prior to trial: (1) the

---

[6]We have found no decision involving this question by any federal circuit court of appeals.

[7]Cf. Stewart Stamping Corp. v. Westchester Products Co. (S.D. N.Y.) 17 F. R. D. 248, 19 Fed. Rules Serv. 33.321, Case 1; General Motors Corp. v. California Research Corp. (D. Del.) 12 Fed. Rules Serv. 33.342, Case 1, 8 F. R. D. 568; North River Barge Line, Inc. v. Grace Line, Inc. (S.D. N.Y.) 11 Fed. Rules Serv. 33.31, Case 2, 8 F. R. D. 117 (under Admiralty Rule 31, also decided prior to the effective date of the 1948 amendments to federal rules of civil procedure but after they had been proposed and promulgated).

narrowing of the issues by eliminating matters about which there is no real controversy, (2) the securing of information with respect to the existence of evidence which may be used at the trial, and (3) the obtention of evidence for use at the trial.

"The principle governing feature of the Rule is that the matter about which a witness may be examined must be 'relevant to the subject matter' of the action, whether it relates to the claim or defense of the examining party or that of any other party. Even though it would otherwise be incompetent and inadmissible, information may be elicited if it 'appears reasonably calculated to lead to the discovery of admissible evidence.' "

The court then goes on to show that, if a judgment were obtained and an execution returned "No property found," an independent action could be brought against the insurance company, and from that the court reasons that, if the insurance question is relevant to the subject matter after the plaintiff prevails, it is relevant while the action pends. Apparently the court completely overlooked what it had stated previously to be the purpose of the discovery rule.

Of course, the distinction is that, when an action is brought after an execution is returned unsatisfied, the amount of insurance may then be discoverable and would then be relevant to the subject matter of another action, whereas it is not relevant to the subject matter of the initial action. Our statutes and the rules, and we assume statutes of other states, have provisions relating to discovery of facts after the return of an execution that no property can be found which have no application whatsoever to the trial. We cannot accept the court's analysis in this case. Furthermore, the case does not hold that the amount of insurance is discoverable for the sole purpose of enabling a party to determine whether or not he will settle a pending action.

The parties have cited and rely upon other cases which are not strictly in point but which we are urged to adopt by analogy. The case of Superior Ins. Co. v. Superior Court, 37 Cal. (2d) 749, 235 P. (2d) 833, involved a proceeding brought for the perpetuation of testimony. That case had an interesting history. The proceeding

was commenced by an application for perpetuation of testimony under §§ 2083 to 2089 of the California Code of Civil Procedure. The applicant alleged that she expected to be a party to an action against one Paul Witten and the Superior Insurance Company "to enforce payment of a judgment which she expects will be rendered in her favor" for personal injuries arising out of an automobile accident. The superior court granted the application and ordered the production of insurance policies carried by Witten. The insurance company disclosed the issuance of the insurance policy, specimen policies were introduced, and all facts except the amount of insurance were disclosed. They refused to disclose the amount. An order to show cause why questions showing the amount should not be answered was issued. Before the hearing thereon, the court of appeals issued its alternative writ of mandamus requiring the superior court to vacate its order or to show cause why it had not done so. Thereafter, the court issued its peremptory writ by unanimous decision holding that such information would not be an aid in the determination of any of the issues of the personal injury action. Superior Ins. Co. v. Superior Court, (Cal. App.) 226 P. (2d) 365. When the matter came before the supreme court, the peremptory writ was denied by a divided court, two justices dissenting.

California had a statute[8] under which a policy of insurance must carry a provision granting to one who recovers a judgment in a personal injury action a right of action against the insurer of the judgment debtor. In view of this statutory provision, the California supreme court concluded that there existed a contractual relationship between the insurer and the judgment creditor; therefore, that it would permit discovery of the insurance carried under its statutes for perpetuation of evidence. Some of the language of the court seemingly supports the contentions of plaintiff here but the case does not involve discovery under the rules which we now have before us.

The Nevada court in State ex rel. Allen v. District Court, 69 Nev. 196, 245 P. (2d) 999, came to the opposite result under statutes for

---

[8]Insurance Code of California, § 11580, as amended by Cal. Stat. 1949, c. 1380, § 8.

the perpetuation of testimony which are identical with the California statutes. As a matter of fact, it appears that they are copied from the California statutes. Nevada does not have a statute, however, such as § 11580 of the Insurance Code of California. The Nevada court concluded that, in the absence of such statute, it could not reach the conclusion that there existed a contractual relationship between plaintiff and the insurer as the California court had done. The Nevada court adopted the views of two dissenting justices in the California decision.

Our former statutes (M. S. A. c. 598) and rules (27.01, *et seq.*) relating to the perpetuation of evidence are not unlike those in California.[9] It is undoubtedly true that they have the same purpose in mind. The proceeding now before us is not brought under those statutes or rules. The rule is not intended as a discovery procedure.[10] We also have a statute (M. S. A. 60.51)[11] which permits a direct action against an insurer after an execution is returned unsatisfied. Our statute is more limited than the California statute and was intended to protect a judgment creditor only in case of the insolvency of a judgment debtor. If the judgment debtor is able to respond, our statute gives the judgment creditor no right to proceed against the insurer, contractual or otherwise. The right to proceed against the insurance company arises by virtue of the statute which declares that the policy is deemed to have granted such

[9] See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 70.

[10] 2 Youngquist & Blacik, Minnesota Rules Practice, p. 65.

[11] "Every bond or policy of insurance issued in this state insuring against either actual loss suffered by the insured, and imposed by law for damages on account of personal injury, death, or injury to property caused by accident, or legal liability imposed upon the insured by reason of such injuries or death, shall, notwithstanding anything in the policy to the contrary, be deemed to contain the following condition:

"The bankruptcy or insolvency of the insured shall not relieve the insurer of any of its obligations under this policy, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this policy against the company to the same extent that the insured would have, had the insured paid the final judgment."

right. The right being established by statute, we have no right to extend it beyond its terms. This statutory provision became part of our law by the enactment of L. 1937, c. 183.[12] Prior to that time we had no statutory authority enabling a judgment creditor to sue the insurer of the judgment debtor directly in this type of case. In order to provide some method of reaching an insurer who refused to pay, we developed, by court decision, the practice of permitting the insurer to be garnished. This right was first recognized by this court in Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L.R.A. (N.S.) 184. The rule is based on our conclusion that after entry of judgment the insurer was a debtor of the insured and thereafter subject to garnishment. Mahr v. Maryland Cas. Co. 132 Minn. 336, 156 N. W. 668. The rule has been followed in many cases since its adoption (see, 8 Dunnell, Dig. [3 ed.] § 3966, note 13), and it is now well established that in this type of action the insurer may be garnished after judgment is entered against the defendant. The situation differs from a usual garnishment in that it is not available until after entry of judgment. It is therefore difficult to see how it gives the plaintiff any right, contractual or otherwise, against the insurer until judgment is procured. If the insurer denies liability, a supplemental complaint may be served, and the issues thus made are tried as in other actions under M. S. A. 571.51. Knudson v. Anderson, 199 Minn. 479, 272 N. W. 376. The issues in such action, however, are something different from the issues in the original action.

The original federal rule, which was amended on December 27, 1946, effective March 19, 1948, gave rise to much difference of opinion

[12]The purpose of this statute is stated in 22 Minn. L. Rev. 236, note 42, as follows:

"* * * This statute is designed to curb alleged racketeering practices on the part of certain cut-rate insurance companies issuing automobile insurance policies containing a provision relieving them of liability in the event the assured is adjudged a bankrupt either before or subsequent to the entry of judgment against him. It is claimed that in many instances through fraud or collusion the insured has been induced by the insurance company to file a petition in bankruptcy, thus relieving both the insurer and himself of liability."

among the courts as to whether discovery could be had of evidence not admissible on the trial. The notes of the advisory committee[13] regarding the amendment are helpful in determining the scope of permissible discovery under the amended rule as it presently exists. Among other things, the advisory committee said:

"The amendments to subdivision (b) make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party *in the preparation or presentation of his case.* \* \* \* In such a preliminary inquiry admissibility at trial should not be the test as to whether the information sought is within the scope of proper examination. Such a standard unnecessarily curtails the utility of discovery practice. *Of course, matters entirely without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry,* but to the extent that the examination develops useful information, it functions successfully as an instrument of discovery, even if it produces no testimony directly admissible." (Italics supplied.)

Many of the cases which led to the amendment of the rule are collected in the notes of the advisory committee.

The federal decisions since the amendment on the precise question before us are not too helpful. The trial courts disagree. It may well be that the reason the question has not reached more appellate courts is that it is extremely difficult to obtain a review of such preliminary questions before it is too late to do any good.[14] Most litigants hesitate to submit to a conviction for contempt, and, rather than do so, they make the disclosure when ordered to do so by the court. It thereafter accomplishes nothing to have the matter reviewed after trial. Even a reversal and the granting of a new trial cannot erase from an opponent's mind the information so obtained.

---

[13] 2 Youngquist & Blacik, Minnesota Rules Practice, p. 27.

[14] See, Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688.

It would seem to us that, even though the discovery is not to be limited to facts which may be admissible as evidence, the ultimate goal is to ascertain facts or information which may be used for proof or defense of an action. Such information may be discovered by leads from other discoverable information. The purpose of the discovery rules is to take the surprise out of trials of cases so that all relevant facts and information pertaining to the action may be ascertained in advance of trial. Where it is sought to discover information which can have no possible bearing on the determination of the action on its merits, it can hardly be within the rule. It is not intended to supply information for the personal use of a litigant that has no connection with the determination of the issues involved in the action on their merits. Balazs v. Anderson (N. D. Ohio) 77 F. Supp. 612.

Our attention has been called to a number of memorandum decisions of trial courts of this state that have been collected by a committee of the state bar association. We have examined these decisions but see no need of discussing the merits of them. About all that can be said about them is that the trial judges are not in agreement.[15]

If the amount of insurance coverage is discoverable under these rules, we see no reason why the defendant cannot be made to disclose the extent of his property as well. In evaluating a case for the purpose of determining whether it would be advisable to settle, we fail to see any distinction between knowledge concerning the extent of insurance coverage or similar knowledge as to the extent of defendant's financial ability to pay, except possibly in those limited number of cases where a plaintiff does not desire to collect from a friendly defendant. This proposition is disposed of in the case before us by simply stating: "It is not comparable to a determination of defendant's financial status." But this proposition cannot be so easily shrugged aside. As far as we can determine, it is the same and would be useful for the same purpose.

---

[15]See, Wright, Minnesota Rules, p. 162.

Judge Kirkpatrick in McClure v. Boeger (E. D. Pa.) 105 F. Supp. 612, 613, recognized this fact when he said:

"* * * every argument that could be made in favor of requiring the disclosure could also be made in favor of compelling a defendant in any civil case, tort or contract, to furnish the plaintiff with full information as to his financial resources, and, in the case of an individual, as to the extent of his private fortune."

Obviously, that is the true situation. Our proceedings supplementary to execution (M. S. A. c. 575) recognized this situation and provide for an examination of a judgment debtor after an execution has been returned unsatisfied. Apparently Rule 69 of the Rules of Civil Procedure contemplates that these statutes should be effective after the adoption of the rules as well as before.[16]

It is next urged that the word "determination" in Rule 1 contemplates a settlement as well as a trial. A reading of the enabling act, as well as the rules involved, it seems to us, can lead to only one conclusion—that the word "determination" refers to the disposition of the action in some manner over which the court has control. That the court does not control a settlement is of course obvious. It is hoped that by a full and complete disclosure of all the facts many cases will be disposed of on their merits without trial. This comes about by taking the surprise out of the trial of cases and by ascertaining what the facts are before trial.

One of the few decisions of a federal trial court in which this question of settlement is mentioned is Benal Theatre Corp. v. Paramount Pictures, Inc. (S. D. N. Y.) 13 Fed. Rules Serv. 34.41, Case 2, 9 F. R. D. 726, 739. While that case did not involve the precise question before us, the court there said:

"* * * Since these suits do become bitter and since the bitterness does not become less with the age of the controversy, it behooves the court to dispose of the suit as speedily as possible consistent with the real rights of the parties. Such opportunity of observation as the writer has had has convinced him that a liberal construction of

[16] See, 3 Youngquist & Blacik, Minnesota Rules Practice, p. 475.

the Federal Rules of Civil Procedure providing for pre-trial discovery brings about a speedy disposition of law suits. A liberal construction of the rules not only saves the time of the court, of counsel and of the parties by shortening the time required for trials but also contributes to bring about settlements. After the evidentiary facts have been spread upon the record and both sides have had opportunity to consider them, the parties, knowing how much or how little they really have to quarrel about, are more likely to settle their controversy."

That does not mean that information should be discoverable which is desired only for the purpose of placing one party in a more strategic position than he otherwise would be by acquiring information that has nothing to do with the merits of the action. There must be some connection between the information sought and the action itself before it becomes discoverable.

Under the guise of liberal construction, we should not emasculate the rules by permitting something which never was intended or is not within the declared objects for which they were adopted. Neither should expedience or the desire to dispose of lawsuits without trial, however desirable that may be from the standpoint of relieving congested calendars, be permitted to cause us to lose sight of the limitations of the discovery rules or the boundaries beyond which we should not go. If, perchance, we have the power under the enabling act to extend the discovery rules to permit discovery of information desired for the sole purpose of encouraging or assisting in negotiations for settlement of tort claims, it would be far better to amend the rules so as to state what may and what may not be done in that field than to stretch the present discovery rules so as to accomplish something which the language of the rules does not permit.

We think that the information sought is not within the permissible scope of Rule 34. We do not hold that insurance is never discoverable. Cases may arise in which the existence of insurance may have some evidentiary value in proving or disproving the issues involved in the action. Our decision is intended to hold only that, where the information is sought for the sole purpose of evaluating a

case for the purpose of determining whether it would be advisable to settle, it is not discoverable under this rule. Neither do we hold that it is not discoverable after judgment is obtained in the action. Neither party will be allowed costs or disbursements.

The alternative writ of prohibition is made absolute.

THOMAS GALLAGHER, JUSTICE (dissenting).

1. I am of the opinion that a fair construction[17] of Rules 26 to 37 of the Rules of Civil Procedure, sometimes designated as the "discovery rules," would compel affirmance of the court's order directing production of defendant's automobile liability insurance policy. The basic purpose to be achieved by their construction, as stated in Rule 1 thereof, is the "just, speedy, and inexpensive determination of every action." It can scarcely be disputed that a fair and equitable settlement of an action is often a more just, and certainly a more speedy determination of it, than ordinarily follows an actual trial of the issues therein. If, as is often the case, disclosure of the insurance coverage will bring about such settlements, it would seem that the ends sought by the Rules, as above disclosed, are thereby effectively attained.

2. It is suggested that compulsory disclosure of insurance limits in effect would be the same as compelling a defendant to disclose his financial condition prior to judgment. There are several answers to this argument. The one that first suggests itself is that through garnishment proceedings, *prior to judgment,* a plaintiff, to a very large degree, may ascertain a defendant's financial status, *and in fact may compel the segregation of a portion of his assets as security in whole or in part for any judgment plaintiff may obtain in the action.* Further, ordinarily the credit rating; the real or personal property owned; and many other facts bearing on a defendant's financial status may be discovered through private credit agencies or credit reporter systems organized and operating for just such purposes.

---

[17] In Hickman v. Taylor, 329 U. S. 495, 507, 67 S. Ct. 385, 392, 91 L. ed. 451, 460, it was said: "* * * the deposition-discovery rules are to be accorded a broad and liberal treatment. * * * Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."

Resort thereto, and to the knowledge gained therefrom, no doubt, has resulted in speedy settlement of innumerable cases and has saved countless hours and days of litigation.

3. Rule 26.02 provides that "the witness may be examined regarding any matter * * * which is relevant to the subject matter involved in the pending action" though "inadmissible at the trial." The words "subject matter" as used therein should be construed to include the entire scope of an action from its origin to the collection of any judgment thereby obtained. Under the standard form of automobile liability insurance contract, the insurer is virtually substituted as a party defendant. It employs counsel, investigates claims, interviews witnesses, and in fact controls the entire defense of any action covered by the policy. To hold that the amount of coverage in such a policy is not "relevant to the subject matter involved in the pending action" would seem to bring about a result exactly the opposite to the speedy and just determination of litigation sought to be achieved by the rules. As stated in Maddox v. Grauman (Ky.) 265 S. W. (2d) 939, 942:

"If the insurance question is relevant to the subject matter after the plaintiff prevails, why is it not relevant while the action pends? We believe it is. An insurance contract is no longer a secret, private, confidential arrangement between the insurance carrier and the individual but it is an agreement that embraces those whose person or property may be injured by the negligent act of the insured. We conclude the answers to the propounded questions are relevant to the subject matter of the litigation and within the spirit and meaning of CR 26.02."

4. It is true, as indicated in the majority opinion, that the courts are divided on this issue. Those supporting the viewpoint of the writer, including a number of federal district court decisions, are Brackett v. Woodall Food Products, Inc. (E. D. Tenn.) 12 F. R. D. 4; Maddox v. Grauman (Ky.) 265 S. W. (2d) 939; Orgel v. McCurdy (S. D. N. Y.) 8 F. R. D. 585; Superior Ins. Co. v. Superior Court, 37 Cal. (2d) 749, 235 P. (2d) 833. An able summary on the issue is

set forth by Professor Wright in his commentary to Rule 26 set forth in Wright, Minnesota Rules, p. 164. Therein he states:

"\* \* \* If the requirement of relevancy is to be given the broad interpretation argued for in section 3 of this Commentary, it must be said that insurance coverage is 'relevant'; as a practical matter, a plaintiff's attorney may be more interested in knowing about insurance coverage than he is even in knowing the facts on liability. To say that insurance is irrelevant would be patently unrealistic. Further, knowledge of the extent of insurance coverage should aid the objectives of Rule 1 by leading to more purposeful discussions of settlement, and thus helping eliminate court congestion and ensuring the more speedy and inexpensive determination of many controversies.

"On the other hand, the language in Rule 26.02 that testimony obtained must appear 'reasonably calculated to lead to the discovery of admissible evidence' is extremely troublesome. What admissible evidence can possibly result from knowledge of defendant's insurance coverage?

"\* \* \* we are impressed by the fact that a decisive majority of experienced Minnesota judges have held such discovery proper. We are impressed, too, by the strong decision from the California Supreme Court discussed earlier. A decision in point from so authoritative a court will carry great weight."

Based upon the foregoing considerations, I am of the opinion that the trial court was correct in its determination of the question.