97 So.2d 693 (1957)
Maxwell J. BROOKS, Petitioner,
v.
Larry OWENS, a minor by his next friend and natural guardian, Bernice Kleiser, Respondent.
Supreme Court of Florida.
October 25, 1957.
*694 James A. Dixon and Dixon, DeJarnette, Bradford & Williams, Miami, for petitioner.
John M. Kelley, Jr., and Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for respondent.
O'CONNELL, Justice.
Maxwell J. Brooks, petitioner, was defendant in an action in the Circuit Court brought by the plaintiff, Larry Owens, a minor, by his next friend, Bernice Kleiser, arising out of an intersection collision between the defendant's automobile and the plaintiff-respondent's motorcycle. The parties will be referred to as plaintiff and defendant.
Defendant filed his answer to the complaint. He denied negligence and alleged contributory negligence. The plaintiff-respondent then took defendant's deposition, in which defendant was asked (1) whether the automobile involved was the only one owned by the defendant; (2) whether defendant had automobile liability insurance; and (3) what were the limits of the liability insurance.
Defendant refused to answer the above three questions and plaintiff made a motion he be required to answer. Defendant responded, answering the first two questions affirmatively, but refusing to answer the third. Grounds given by the defendant for his refusal were that disclosure of the policy limits would deprive him of liberty and property without due process of law and deny to him other constitutional rights guaranteed by the federal and state constitutions, and would subject him to oppression and embarrassment. He alleged the questions were propounded to him in bad faith, and their sole purpose was to enable the plaintiff to make a demand for settlement within the policy limits and thereby put pressure upon him to require settlement by his insurance carrier within such limits. He also contended the plaintiff did not show good cause for the relief prayed for in his motion, as required by, 30 F.S.A. Fla. Rules Civ. Proc. 1.28. Defendant concluded by saying the plaintiff had no rights in the policy of insurance unless and until he should recover judgment against the defendant and that the relief prayed for was not designed to lead to any admissible evidence, being wholly irrelevant and immaterial unless and until the plaintiff should have a judgment against defendant entered for him and such judgment remained unsatisfied.
A hearing was held on plaintiff's motion and defendant's response and argument of counsel was heard. The judge entered his order requiring the defendant to answer and, defendant having announced his intention not to comply, the judge then ordered that defendant's answer to the complaint be stricken and he be adjudged to be in default.
Defendant entered his notice of appeal and also filed the subject petition for certiorari addressed to the same order dismissing his answer and declaring him to to be in default.
If the defendant is entitled to review of the order complained of, it must be by certiorari and not by appeal. The order of default was not a final order, subject to appeal, as it does not meet the test set out in Slatcoff v. Dezen, Fla., 1954, *695 72 So.2d 800, in that it does not indicate an end of judicial labor. This court long ago ruled that an order of default is not a final judgment. Coons v. Harllee, 1880, 17 Fla. 484; Blount v. Gallaher, 1886, 22 Fla. 92. See also 4 C.J.S. Appeal and Error § 155.
This court will review an interlocutory order in law only under exceptional circumstances. Where it clearly appears that there is no full, adequate and complete remedy by appeal after final judgment available to the petitioner, this court will consider granting the writ, as where the lower court acts without and in excess of its jurisdiction, or the order does not conform to essential requirements of law and may cause material injury throughout subsequent proceedings for which the remedy by appeal will be inadequate. Kauffman v. King, Fla., 1956, 89 So.2d 24; Huie v. State, Fla., 1956, 92 So.2d 264. See also 5 Fla.Jur. Certiorari Sec. 12.
We must determine, therefore, whether the facts of the instant case warrant the special dispensation of this court as prayed for in the petition. If the lower court erred in its ruling that the policy limits were a proper matter of discovery, but this petition were denied, defendant would have two alternatives. For one, he could do nothing further, whereupon a judgment would be entered against him, for his liability would be admitted by the default. A jury would assess the damages. Defendant would then be gambling on the amount of damages the jury would assess and on the possibility of having this court, on appeal, fail to reverse the trial court. This court, on the appeal, would not be reviewing the sufficiency of the evidence to convict the defendant of the negligence alleged, but would be reviewing the action of the trial court in striking defendant's answer and adjudging him to be in default. If this court reversed the trial court, defendant would then be gambling on whether a jury in a new trial would find him liable on the merits of the case. If this Court were to affirm the trial court's action, defendant would be adjudged liable as a matter of record, with no trial ever having been had on the merits. Under these circumstances, this gamble, whether or not this court would reverse the trial court, is one we do not find the defendant should be compelled to take. If legality of the trial court's action were determined before final judgment were ever entered, the defendant would not be subjected to such possible, subsequent injury in further proceedings to be had in the trial court.
As for the second alternative, defendant could comply by disclosing the policy limits and thus have his answer re-entered. If this were done, defendant contends, his constitutional rights against deprivation of liberty and property without due process of law and against unreasonable searches and seizures would be violated. If disclosure were properly ordered, the deprivation would have been with due process, and the search and seizure would have been reasonable, but if it were improperly ordered, we are inclined to agree with the defendant as to the constitutional violations.
Defendant also contends that if the discovery be allowed, the plaintiff would be in a position to "entrap" the defendant's insurance carrier into the position whereby it could have asserted against it a claim for damages returned by the jury in excess of the policy limits due to its bad faith refusal to compromise within the policy limits. Defendant maintains that the sole purpose of plaintiff's request for the policy limits is to place him in a position to bring about such a result.
While we cannot agree that plaintiff's sole purpose is as contended above, or that the use of the word "entrap" is proper in such case, we do not believe that the rules of civil procedure concerning discovery should be interpreted merely to aid the plaintiff in achieving such a result.
It is our conclusion, therefore, that the defendant presents to us a case qualifying *696 for the review by this court at this time the interlocutory order in law of the lower court, since we are convinced that should defendant be compelled to wait for remedy by appeal irreparable harm would have already resulted.
This court, in Kilgore v. Bird, 1942, 149 Fla. 570, 6 So.2d 541, 544, held that the statutory proceedings for questions to be propounded by the plaintiff to be had in the progress of a lawsuit, are distinct from ordinary judicial proceedings; and if such statutory authority is illegally used or so abused as to cause an injury which cannot be adequately remedied by appeal after final judgment, and the statute affords no appellate review of the distinct statutory proceeding, certiorari may be applied before final judgment within the discretion of the appellate court, under the organic power of the Supreme Court given by the Constitution of Florida.
We have determined, on the general principles expressed above and on the specific authority of Kilgore v. Bird, supra, that if there was a violation of essential requirements of controlling laws, the reasonable result would be an injury to the defendant not subject to remedy by appeal. We must now determine whether there has been a violation of the law.
The controlling laws in question are the rules of civil procedure relating to discovery. The most pertinent rule is Fla. Rules Civ.P. 1.21(b) herein set out:
"(b) Scope of Examination. Unless otherwise ordered by the court as provided herein, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial of the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. * * *"
Also of possible relevancy is Fla.R.Civ.P. 1.28, which reads as follows:
"Rule 1.28 Discovery And Production Of Documents And Things For Inspection, Copying Or Photographing.
"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 1.24(b), the court in which an action is pending, may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 1.21(b) and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examinations permitted by Rule 1.21(b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."
These rules are similar to corresponding federal rules of civil procedure. Although the specific question has never confronted this court, it has come before some federal courts and before courts in other jurisdictions with similar rules. There is a conflict in those opinions.
*697 Plaintiff cites several cases in which the courts have ruled policy limits are proper matters of discovery: Maddox v. Grauman, Ky., 1954, 265 S.W.2d 939, 41 A.L.R.2d 964; Superior Ins. Co. v. Superior Court, 1951, 37 Cal.2d 749, 235 P.2d 833; Orgel v. McCurdy, D.C.S.D.N.Y. 1948, 8 F.R.D. 585; Brackett v. Woodall Food Products, Inc., D.C.E.D. Tenn. 1951, 12 F.R.D. 4.
In Maddox v. Grauman, supra, the rule in question was substantially the same as the federal rule, Rule 26(b), 28 U.S.C.A. The court held that the requirement of the rule that the matter be relevant to the subject matter should be more loosely construed upon pre-trial examination than at trial, and required only that the subject matter be relevant to the subject matter involved in the action. The court reasoned that if the insurance question (matter of limits) is relevant to the subject matter after the plaintiff prevails, it is also relevant while the action is pending. The court relied heavily upon its reasoning that automobile liability policies inure to the benefit of every person who may be negligently injured by the insured. Since the rule provides that matter subject to discovery should be relevant to subject matter in a pending case, defendant in the suit before us argues that the Kentucky court stretched to the breaking point the meaning of the word "relevant".
The federal court in Orgel v. McCurdy, supra, ruled that the defendant must testify as to all issues relating to liability insurance carried by him on the motor vehicle involved in the accident. The court said the old principle of keeping the opponent in the dark was now out of date and that any matter generally relevant to the issues in the case were subject to discovery. The defendant had objected to the discovery on the ground that the purpose of the plaintiff in seeking information about liability insurance was to spell out operation and control by the defendant of the subject vehicle from the fact of liability coverage.
In the California case of Superior Ins. Co. v. Superior Court, supra, the defendant refused to give the amount of his coverage. The plaintiff applied to the court seeking to have such information furnished her by the defendant. She alleged she expected to make defendant and the insurer defendants in a suit to enforce payment of a judgment she expected to get in an action pending against the defendant. This procedure was authorized by the Code of Civil Procedure in California. The court found that the provisions of the policy were germane to the plaintiff's cause and material to her anticipated action, when and if brought. In the case at bar, the defendant contends that the California court so ruled because its code of civil procedure provides for no discovery in aid of execution, whereas in our jurisdiction, there is such a specific rule, Fla.R.Civ.P. 1.40. However, the California court also reasoned that automobile liability insurance contracts inure to the benefit of any and every person who might be negligently injured by the assured as completely as if such person were specifically named in the policy. California had a statute, however (Insurance Code of Calif. Sec. 11580), requiring that a policy of insurance must carry a provision granting to one who recovers a judgment in a personal injury action a right of action against the insurer of the judgment debtor. One judge dissented, reasoning that obviously the sole purpose of the proceeding was to obtain information to aid in negotiating for a settlement, which purpose was not within the purview of the statutes.
Because the primary reasoning for the court's ruling in the above case was based on the fact the plaintiff expected to sue the insurer to enforce payment of the judgment she expected to receive against the defendant and that, therefore, the policy information was germane and subject to discovery, we are of the view the case is not of decisive significance in the case before us.
The federal court in Brackett v. Woodall Food Products, supra, also was of the opinion *698 automobile insurance coverage was, under the broad viewpoint, relevant to the subject matter of the litigation, citing Orgel v. McCurdy, supra. The court said that authorities were numerous to the effect that it was not necessary that the documents sought be competent evidence on trial and that plaintiff should be given opportunity, in the preparation of its case, to inspect the liability policy. The court reasoned thusly upon noting that the trend of modern legislation concerning motor vehicles, from its tenor and purpose, showed obviously that such policies are definitely relevant to the subject matter of pending action growing out of accidents covered by such policies.
Defendant cites in support of his view the cases of Jeppesen v. Swanson, 1955, 243 Minn. 547, 68 N.W.2d 649 and McNelley v. Perry, D.C.E.D.Tenn. 1955, 18 F.R.D. 360. We also find the case of McClure v. Boeger, D.C.E.D.Pa. 1952, 105 F. Supp. 612, relevant.
In Jeppesen v. Swanson, supra, plaintiff sought an order permitting him to inspect defendant's liability policy. Plaintiff furnished an affidavit stating he needed to know the policy limits so that he could properly evaluate a figure for settlement or trial. The applicable rule of civil procedure was identical to the federal rule and to Fla.R. Civ.P. 1.28. The motion must be for good cause shown. The court commented that the scope of the discovery permitted was the same as that provided by the rule for taking depositions [Fla.R.Civ.P. 1.21(b) and Fed. R.Civ.P. 26(b)] and that the rules of civil procedure would be given liberal construction. However, the court ruled, there must be some boundary limitation beyond which the court should not go. Research by the court revealed the trial courts, state and federal, were not in accord and that no case on the question had yet gone to a federal court of appeals. The court said that although in that state one could garnish the insurer after judgment was entered against the defendant, the court did not agree with the California court in a case involving a somewhat similar statute allowing the judgment creditor to sue the insurer, Superior Ins. Co. v. Superior Court, supra, in interpreting such to mean a plaintiff had a right, contractual or otherwise, against the insurer until after judgment is procured. Therefore, the court concluded the matter was not subject to discovery. It said that even though discovery was not limited to facts admissible as evidence, the ultimate goal is to ascertain facts which may be used for proof or defense of an action, and that the purpose of discovery rules was to take the surprise out of trials so that all relevant facts pertaining to the action may be ascertained in advance of trial. The rules were not intended, said the court, to supply information for the personal use of a litigant that has no connection with the determination of the issues involved in the action on the merits.
In an earlier case, McClure v. Boeger, supra, plaintiff moved for production of defendant's policy of insurance, but the court felt the plaintiff did not show sufficient good cause, as required. The court held it was not sufficient upon the sole statement by the plaintiff that production of the policy might afford him "rights" not otherwise available. As in Jeppesen v. Swanson, supra, the court felt there was not much distinction between compelling a defendant to disclose his policy limits and in compelling him to disclose his financial worth. The judge stated that whatever advantages the plaintiff might gain were not advantages which had anything to do with his presentation of his case at trial and did not lead to disclosure of the kind of information which is the objective of discovery procedure.
McNelley v. Perry, supra, was also decided by a federal court in Tennessee, as was Brackett v. Woodall Food Products, supra, but was decided by a different division of the court. It was also decided subsequent to Jeppesen v. Swanson, supra. Most of the cases referred to above were cited by the court, on both sides of the question. The court found that it was not shown that the information sought (policy limits and *699 the name of the insurer, if insurance existed) was relevant to either of the two general purposes in seeking information from an adversary (1) to use in the trial, or (2) to use to lead to information for use in the trial. It felt that the facts of Brackett v. Woodall Food Products, supra, were such, as to constitute the information relevant, since it appeared that the defendant was insolvent, so that proration of insurance might have been an issue among various claimants. The court concluded that the information sought was not a proper matter of discovery.
We adopt the view expressed above that the limits of liability insurance on a policy covering an automobile of a defendant are not proper matters subject to discovery under Fla.R.Civ.P. 1.21(b). It is our view that the rule is applicable only to those matters admissible in evidence or calculated reasonably to lead to the discovery of admissible evidence. The matter must be relevant to either one of those expressed purposes concerning a pending action. It must pertain either to the proof or the defense of an action. The basic concept of our judicial system is to insure to citizens of this state and nation an entry into the courts for the purpose of (1) proving liability for an injury and (2) proving damages occasioned thereby. Limits of insurance carried by a defendant in a cause of action are not relevant to either of those basic purposes. Rules of discovery adopted by our courts are designed to secure the just, speedy and inexpensive determination of every action. As said by the court in the Jeppesen case, supra, 68 N.W.2d at page 658, that does not mean that information should be discoverable which is desired only for the purpose of placing one party in a more strategic position than he otherwise would be by acquiring information that has nothing to do with the merits of the action; there must be some connection between the information sought and the action itself before it becomes discoverable. We do not believe that such rules, procedural in design, should increase or otherwise alter basic substantive rights of either party to litigation.
Plaintiff advances many arguments in favor of his interpretation. We have seen how some state and federal courts have agreed with his reasoning. Plaintiff summarizes those opinions on this subject by stating that in every case where the courts allowed the discovery, the subject rule, like ours, did not require that good cause be shown, but that in every case where the discovery was denied, the applicable rule, unlike ours, required that good cause be shown. Consequently, he argues we should admit the discovery, as our rule 1.21(b) does not require good cause to be shown.
Following this argument if a party were desirous of learning his opponent's limits of insurance, he could ask for such information upon deposition taken in accordance with Rule 1.21(b), wherein no good cause need be shown. Under plaintiff's reasoning above, he should be granted his information. Yet if the party sought instead to have the policy produced for inspection, copying or photographing, under Rule 1.28, for the same avowed purpose of learning the policy limits, the rule requires he show good cause. Plaintiff's argument above permits our refusing the discovery under Rule 1.28 on such circumstances as involved in the present case and thus its fallacy becomes apparent.
Plaintiff also argues that the Jeppesen case, supra, was expressly limited to the situation where the sole purpose of the plaintiff's inquiry was to evaluate the case for the purpose of determining whether it would be advisable to settle. He draws attention to the fact he has stated that unlike the plaintiff in the Jeppesen case, he does not wish to obtain the information for the sole purpose of determining whether or not he will settle. Defendant informs us that in his reply brief in the lower court, the plaintiff stated that he intended to make it irrevocably plain that he would settle the case within the policy limits. At any rate, plaintiff has not convinced us his purpose is *700 superior or more compelling than the plaintiff's in the Jeppesen case. If defendant's contention is true that the plaintiff is attempting to "entrap" the insurer into liability for damages set by a jury in excess of policy limits, the purpose is less worthy than the plaintiff's in the Jeppesen case. We cannot, however, under the circumstances of this case, conceive of a purpose possessed by plaintiff to change the intent of the rules of civil procedure, as we ascertain such intent, so that the information sought would be considered subject to discovery. We of course recognize that under some conceivable, different circumstances information concerning a policy of insurance may be relevant to the issues of a pending cause.
Some of the decisions we have reviewed have expressed the view that an automobile liability insurance policy inures to the benefit of any and all suffering injury occasioned by such insured's automobile. While such a doctrine may develop in the foreseeable future, we do not believe it has yet been established. We would rather agree with the federal judge in Brackett v. Woodall Food Products, supra, 12 F.R.D. at page 5, where he said:
"* * * While, of course, such an insurance policy ordinarily inures to the benefit of persons injured by the wrongful acts of the insured, and in many cases and jurisdictions such insurance is required by law for that purpose, nevertheless such insurance is ordinarily considered to be for protection of the insured, and is in the nature of a reimbursement for a loss."
Plaintiff also contends that since the rules are designed for speedy "determination" of cases and "settlement" is in itself a "determination", the rules should be construed to allow discovery of policy limits to aid in determination by settlement. Again, we would not agree but adopt the following from Jeppesen v. Swanson, supra, 68 N.W.2d at page 657:
"It is next urged that the word `determination' in Rule 1 contemplates a settlement as well as a trial. A reading of the enabling act, as well as the rules involved, it seems to us, can lead to only one conclusion  that the word `determination' refers to the disposition of the action in some manner over which the court has control. That the court does not control a settlement is of course obvious * * *"
In reply to other arguments of the plaintiff, and of some other courts, we also adopt the following from the Jeppesen case, 68 N.W.2d at page 658:
"Under the guise of liberal construction, we should not emasculate the rules by permitting something which never was intended or is not within the declared objects for which they were adopted. Neither should expedience or the desire to dispose of lawsuits without trial, however desirable that may be from the standpoint of relieving congested calendars, be permitted to cause us to lose sight of the limitations of the discovery rules or the boundaries beyond which we should not go * * *"
Having reached the above conclusions that the essential requirements of the law have been violated whereupon the defendant would suffer thereby in subsequent proceedings, we grant the defendant's petition for writ of certiorari to review the interlocutory order entered in the cause at law in the court below.
The order of the court adjudging the defendant to be in default and striking defendant's answer is quashed.
TERRELL, C.J., and THOMAS, HOBSON, and ROBERTS, JJ., concur.
*701 DREW, J., dissents.
DREW, Justice (dissenting).
I am of the view that this Court should align itself with the courts of Kentucky and California which hold that a policy of liability insurance is a matter not privileged which is relevant to the subject matter involved in an action for damages arising out of an automobile accident.[1] It is my view that Rule 1.21(b) construed in the light of the admonition in Rule A to the effect that the rules are adopted "to secure the just, speedy and inexpensive determination of every action" clearly authorizes the interrogation of the defendant as to the amount, terms and conditions of such policy.
Automobile liability insurance is closely related to the general welfare. A great number of states require that automobile owners carry such insurance. Obviously the public purpose involved in such legislation and the underlying purpose which prompts an enactment is the protection of the injured party and not the tort feasor. The state is not particularly interested in whether a tort feasor is required to pay a judgment but it is interested in protecting the public generally from injury occasioned by the operation of motor vehicles upon the public highways and public places. Moreover, it is a matter of common knowledge that the vast majority of claims arising out of such accidents are settled by negotiation rather than litigation. I assume also that it would not be difficult to show that a great majority of cases on which litigation is actually commenced are settled before trial.
I can see no harm which will come from requiring a defendant to disclose the limits and conditions of the policy of insurance which he carries for the obvious benefit of the injured party. Moreover in negotiations or litigation both sides should have access to all of the facts. The administration of justice should not be a game of hide and seek. One party should not be blindfolded in negotiating a settlement or a compromise. It is a fundamental concept that both sides should have all the facts in the settlement of disputes and this can never be achieved unless some method is provided of requiring the full disclosure by a process which will afford protection to the party entering into a settlement of the terms and extent of liability insurance policies.
California, Kentucky and at least one or two Federal district courts have construed rules almost identical to ours to allow discovery with reference to this matter.[2] I feel that this is the modern and better view and one which will tend to promote the speedy administration of justice and the disposition of claims arising out of automobile accidents which are becoming a serious consideration of all the courts of the land.
NOTES
[1] See the cases cited by plaintiff to which the majority opinion refers in connection with this point.
[2] See the cases cited by plaintiff to which the majority opinion refers in connection with this point.