(No. 34411.—

THE PEOPLE *ex rel.* Alveston Terry, Petitioner, *vs.* HARRY M. FISHER, Judge of the Circuit Court, Respondent.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

HOUSE, J., dissenting.

HINSHAW, CULBERTSON, MOELMANN & HOBAN, of Chicago, (OSWELL G. TREADWAY, of counsel,) for petitioner.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (L. LOUIS KARTON, and FRANCIS X. RILEY, of counsel,) for respondent.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is an original petition for *mandamus* on relation of Alveston Terry, the defendant in a personal injury suit pending in the circuit court of Cook County before the Honorable Harry M. Fisher, respondent herein, to compel respondent to expunge from the record of the personal injury cause certain orders requiring petitioner to answer discovery interrogatories respecting the existence and amount of his liability insurance.

The cause presents the single issue of whether, under the Civil Practice Act and Rules promulgated pursuant thereto, a defendant can be compelled to answer discovery

interrogatories respecting the existence and amount of any liability insurance.

Petitioner contends that the circuit court exceeded its authority under the Civil Practice Act and Rules in requiring petitioner to respond to the said interrogatories, and that *mandamus* should issue to compel the respondent to expunge the void orders. Respondent, however, argues that the orders are within the scope of the Rules and constitute a proper part of the record.

The relevant section of the Civil Practice Act, section 58(1), (Ill. Rev. Stat. 1955, chap. 110, par. 58(1),) provides that, "Discovery, admissions of fact and of genuineness of documents and answers to interrogatories shall be in accordance with rules." Supreme Court Rule 19—11, relating to interrogatories, provides that they may be served within the same time and under the same circumstances as depositions may be taken, and Rule 19—4 defines the scope of examination on deposition. This latter Rule provides: "Upon a discovery deposition, the deponent may be examined regarding any matter, not privileged, relating to the merits of the matter in litigation, whether it relates to the claim or defense of the examining party or of any other party, including the existence, description, nature, custody, condition and location of any documents or tangible things and the identity and location of persons having knowledge of relevant facts."

With reference to the particular interrogatories involved herein, since the Illinois courts have not yet determined whether the existence and amount of defendant's insurance is discoverable under our Rules, a chronological review of the decisions and reasoning of the courts of other jurisdictions on this issue may be helpful.

In *Goheen* v. *Goheen*, 9 N. J. Misc. 507, 154 Atl. 393, the first case presenting this question, the New Jersey court, in 1933, without reference to any practice act, denied such interrogatories on the ground that they did not constitute

material and competent evidence. In 1933 the Michigan court in *Layton* v. *Cregan & Mallory Co.* 263 Mich. 30, 248 N.W. 539, held that plaintiff was entitled to the production of defendant's insurance policy, since it might be relevant to the issue of disputed ownership of the automobile which collided with plaintiff's car. The court neither discussed the *Goheen case,* nor any rule of civil practice.

The California court in 1937, in *Demaree* v. *Superior Court,* 10 Cal.2d 99, 73 P.2d 605, held that the provisions of defendant's insurance policy were germane to the petitioner's cause and material to their anticipated action against the insurance company "when and if brought," and that a sufficient basis was laid for the request for such information in the proceeding to perpetuate testimony.

In 1948 a Federal court in New York, in *Orgel* v. *McCurdy,* 8 F.R.D. 585, held that under Federal Rule 26(b) plaintiff could examine defendant before trial on the matter of liability insurance, since it was not necessary to establish the admissibility of the testimony, but only that the information was relevant to the subject matter of the pending action. Rule 26(b) provides: "* * * deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The *Orgel case* was cited by the Federal district court in Tennessee in 1951 in *Brackett* v. *Woodall Products, Inc.,* 12 F.R.D. 4, where it was held that plaintiff could examine defendant's liability insurance policy under Federal Rules

34 and 26(b), on the ground that from the tenor and purpose of Federal and State legislation affecting liability insurance for the benefit of injured persons, such policies are relevant to the subject matter of pending actions growing out of accidents. The court stated: "The court finds that it is material to the plaintiffs in the preparation of their cases for trial that they be given an opportunity to inspect, and, if desired to copy, the liability insurance policy, as the policy provisions may afford the plaintiffs a right of which they would otherwise not be able to avail themselves."

However, the following year, 1952, the Federal district court in Pennsylvania, disagreed with the interpretation of the Federal Rules in the *Brackett case,* and held that, although information need not be admissible in evidence to be discoverable, nevertheless, the insurance information could not be elicited on the ground that whatever advantage plaintiff might gain from the discovery of insurance had nothing to do with the presentation of the case at trial. (*McClure* v. *Boeger,* 105 F. Supp. 12.) The court stated: "Every argument that could be made in favor of requiring the disclosure could also be made in favor of compelling defendant in any civil case to furnish plaintiff with full information as to his financial resources."

The same result was decreed by the Federal court in 1955 in *McNelley* v. *Perry,* 18 F.R.D. 360, where it was reasoned that since the insurance interrogatories could not be used in the trial, or lead to information which could be used in the trial, they were not proper.

Conflicting conclusions are also apparent in the State court decisions between 1951 and 1957. The California court in 1951, in *Superior Ins. Co.* v. *Superior Court,* 37 Cal.2d 749, 235 P.2d 833, reaffirmed its prior decision in the *Demaree case,* permitting plaintiff to elicit from defendant data respecting his liability insurance, and ordering the production of the policy itself.

The court rejected the arguments, also interposed by petitioner herein, that the production of the insurance policy would result in unreasonable search and seizure in violation of the constitution; and that knowledge of the policy limits would provide an undue and oppressive advantage in settlement negotiations. In that connection the court noted that whether such knowledge would benefit plaintiff or defendant depended upon the relationship between the seriousness of the injuries and the amount of insurance coverage. The court also explained that since a liability policy involves a contractual relation which is for the benefit of persons who might be negligently injured by the insured, the existence of the policy is not a matter for the sole knowledge of the named insured and the insurance carrier. Consequently, requiring the production of the policy in no way infringed the sanctity of a private contract.

A contrary ruling was made by the Nevada court in 1952 in *State ex rel. Allen* v. *District Court,* 69 Nev. 196, 245 P.2d 999, in a similar proceeding to perpetuate testimony.

In 1954 the Kentucky court, in a contempt proceeding for defendant's failure to answer whether or not he was insured in a pretrial examination, held that the question of insurance was relevant to a pretrial deposition, and within the spirit and meaning of rules identical to the Federal Rules 26-34. (*Maddox* v. *Grauman,* 265 S.W.2d 939.) The court noted first that "the question of relevancy is more loosely construed upon pretrial examination than at the trial," and that "the Rule requires only relevancy to the subject matter involved in the action." The court then reasoned that since the standard automobile liability insurance policy provides that persons injured by the negligence of the assured may institute proceedings against the carrier if a judgment against the assured is returned unsatisfied, consequently if the insurance is relevant after plaintiff prevails it is also relevant while the action pends. The insur-

ance data was also deemed relevant by the court on the ground that the insurance company is in fact one of the real parties in interest, in that it ordinarily investigates, employs counsel, and assumes control over the litigation involving its insured.

This reasoning was rejected by the Minnesota court, in 1955, in construing identical practice rules, also patterned after the Federal Rules. *Jeppesen* v. *Swanson,* 243 Minn. 547, 68 N.W.2d 649.

The dissenting opinion in the *Jeppesen case* pointed out that insofar as the discovery of insurance would abet settlements, it would be consistent with the ultimate objective of discovery, which is the just, speedy and inexpensive determination of litigation; that it would be patently unrealistic to say that insurance is irrelevant when, under the standard form of automobile liability policy, the insurer is virtually substituted as a party defendant.

Most recently, in *Bean* v. *Best,* 80 N.W.2d 565, the South Dakota court held that under rules patterned after the Federal Rules prior to the 1946 amendment, discovery could not be extended beyond matters admissible in evidence.

In determining the applicability of these decisions we are mindful of the obligation of this court to give these discovery rules an interpretation consistent with their avowed purpose. They were adopted as procedural tools to effectuate the prompt and just disposition of litigation, by educating the parties in advance of trial as to the real value of their claims and defenses. As noted by legal scholars, those rules will suffice for present needs if lawyers and judges will use them with an understanding of that purpose. (50 N.U. L. Rev. 628, Discovery and Depositions, Fitzpatrick and Goff.) Thus, to construe the language of Rule 19—4 "related to the merits of the matter in litigation" to refer only to isolated legal concepts such as negligence, proximate cause, and damages, divorced from

the realities of litigation, would not be using this new tool "with an understanding of its purpose."

In the light of this approach, we must reject at once as authority those cases limiting pretrial discovery to matters admissible in evidence (*Goheen* v. *Goheen,* and *Bean* v. *Best*) as being contrary to both the terms and intent of the Rule. We do not imply that answers to interrogatories can be brought to the attention of the jury.

There is a plausible ring to the argument in the *McClure* and *Jeppesen cases* that if the existence and amount of liability insurance must be disclosed, logic demands that every defendant must be required to disclose his financial resources. That argument is advanced in this case. But in our opinion it is answered by the statutory provisions that confer an interest in such a policy on every member of the public that is negligently injured, and by the unique characteristics of a liability insurance policy.

Section 388 of the Insurance Code (Ill. Rev. Stat. 1955, chap. 73, par. 1000,) requires certain standard provisions to be included in liability policies affording injured persons a right of action against the insurer if execution against the insured is returned unsatisfied; section 58(k) of the Motor Vehicle Act (Ill. Rev. Stat. 1955, chap. 95½, par. 58k,) provides certain minimum liability insurance coverage for motor vehicles; and section 16 of the Truck Act (Ill. Rev. Stat. 1953, chap. 95½, par. 253,) requires motor carriers to have specified liability insurance policies before permits may be issued. Moreover, we have construed section 388 of the Insurance Code to be declarative of the public policy of this State to protect persons injured by the negligent operation of motor vehicles, and as conferring rights which cannot be defeated after the accident by the concerted action of the insured and the insurer. (*Scott* v. *Freeport Motor Casualty Co.* 392 Ill. 332.) It is clear that the legislature, by virtue of the fore-

going enactment, has placed liability insurance in a category distinct from the insured's other assets so far as persons injured by the negligent operation of his motor vehicle are concerned.

Thus, under our statutes, as in California, liability insurance is not merely a private matter for the sole knowledge of the carrier and the insured, but is also for the benefit of persons injured by the negligent operation of insured's motor vehicle. (*Superior Ins. Co.* v. *Superior Court,* 235 P.2d 833.) Therefore, we find more cogent the reasoning of the courts in the *Brackett* and *Maddox cases,* cited by respondent, that such statutory requirements render insurance policies relevant to the litigation against the insured defendant, in that they apprise injured plaintiffs of rights in the matter of litigation of which they might not otherwise avail themselves. It is not inconceivable that a plaintiff with serious injuries would settle a substantial judgment against a defendant of modest means for a fractional sum, simply because he had no knowledge of any additional rights against the insurer. Thus, to deprive an injured party from learning of his rights against an insurer would, in effect, nullify the benevolent purpose of such statutes, and permit insurance companies to avoid their statutory obligation.

Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value. Litigation is a practical business. The litigant sues to recover money and is not interested in a paper judgment that cannot be collected. The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will be actual rather than nominal recovery conditions every aspect of preparation for the trial of these cases,—investgators, doctors, photographers and even the taking of depositions. Ordinarily a plaintiff has many

sources of inquiry by means of which he can appraise the likelihood that the judgment he seeks will be enforceable. In the case of an insurance policy, however, all the customary channels are cut off. Even if he knows the identity of the insurance company and may know its financial standing, it does not help him, for the company is responsible only within the limits of the policy it has issued.

In determining whether liability insurance is discoverable by pretrial interrogatories, we must also take cognizance of the role of insurance companies in such litigation against their insured, for as Justice Holmes noted, "Judges need not be more naive than other men." Inasmuch as the insurance company is virtually substituted as a party, (*Maddox* v. *Grauman*, 265 S.W.2d 939; dissent in *Jeppesen* v. *Swanson*, 243 Minn. 547, 68 N.W.2d 649, 658,) as far as the investigation and conduct of the defense is concerned, it would seem to be relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet and be apprised of his real adversary. Such knowledge, furthermore, would also lead to more purposeful discussions of settlement, and thereby effectuate the dispatch of court business. This aspect is most significant in terms of effective judicial administration in coping with today's congested dockets which are largely attributable to the increasing volume of personal injury litigation.

On the basis of this analysis, it is our opinion that discovery interrogatories respecting the existence and amount of defendant's insurance may be deemed to be "related to the merits of the matter in litigation," as provided in Civil Practice Rules 19—11 and 19—4, since they apprise injured plaintiffs of rights arising out of the accident, otherwise unknown, and which the public policy of this State protects, give counsel a realistic appraisal of his adversary and of the case he must prepare for, and afford a sounder basis for the settlement of disputes. We believe that such

a construction is in accordance with the intention of the framers of the amended Rules to give a broader scope to the practice of discovery and thereby enable attorneys to better prepare and evaluate their cases.

Therefore, the orders of the circuit court of Cook County requiring petitioner to answer the interrogatories in the personal injury proceeding were within the scope of the Civil Practice Rules, and in no way exceeded the jurisdiction of that court. Nor did those orders, issued pursuant to a proper exercise of a procedural rule in a civil case, infringe petitioner's constitutional rights against unreasonable search and seizure, (*Demaree* v. *Superior Court,* 10 Cal.2d 99, 73 P.2d 605; *Superior Ins. Co.* v. *Superior Court,* 37 Cal.2d 749, 235 P.2d 833,) or any other constitutional guarantee. The petition for *mandamus* to compel respondent to expunge the orders should therefore be denied.

*Writ denied.*

Mr. JUSTICE HOUSE, dissenting.