## Toogood v. Watkins, Jr.

*Gordon W. Gerber*, for plaintiff.

*James J. McEldrew*, for defendant.

SPORKIN, J., February 14, 1969.—This case presents to the court a question over which controversy swirls in both Federal and State tribunals throughout the nation: Should defendant in an accident suit be compelled, in a pretrial discovery proceeding, to disclose to plaintiff the existence and extent of his insurance coverage?

Plaintiff, Anna Coxe Toogood, suing for injuries allegedly sustained in an automobile accident, has filed a pretrial interrogatory addressed to defendant, William E. Watkins, Jr., asking that he state whether he is insured for automobile liability, and if so that he disclose the insurer, the policy limits, and whether the insurer is defending the suit under a "reservation of rights on a non-waiver agreement". Defendant Watkins objects to the interrogatory as immaterial, irrelevant and violating the Pennsylvania Rules of Civil Procedure.

The civil procedure rules relating to the subject of "Depositions and Discovery" are those numbered from 4001 to 4025 inclusive. The immediately pertinent rules are 4005 and 4007, with limitations imposed

upon them by 4011, and subject to the use of answers permitted by 4020.[1]

From the rules quoted in the footnote we deduce:

(1) Though we are not specifically so informed, the interrogatory in this case was filed under Rule 4005. That rule permits a party to "file and serve upon any adverse party written interrogatories." Rule 4007, on the other hand, permits a party to take the *deposition* of anyone (though including a *party*), either orally or through written interrogatories. The query filed in the instant case is not a *deposition;* it is a single

---

[1] Rule 4005(a) reads in part: "Subject to the limitations provided by Rule 4011, any party may file and serve upon any adverse party written interrogatories to be answered by the party served. . . ."

Rule 4005(c) reads in part: "Interrogatories may relate to any matters which can be inquired into under Rule 4007 and the answers may be used to the same extent as provided in Rule 4020 for the use of the deposition of a party. . . .".

Rule 4007(a) provides: "Any party may take the testimony of any person, including a party, for the purpose of discovery by deposition upon oral examination or written interrogatories of the identity and whereabouts of witnesses. Subject to the limitations provided by Rule 4011, the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case".

Rule 4011 provides: "No discovery or inspection shall be permitted which (a) is sought in bad faith; (b) causes unreasonable annoyance . . . ; (c) relates to matter which is privileged . . . ; (d) would disclose the existence or location of reports . . . secured . . . in anticipation of litigation . . . other than information as to the identity or whereabouts of witnesses; (e) would require . . . an unreasonable investigation; or (f) would require . . . an opinion as an expert witness, over his objection".

Rule 4020(a) provides in part: "At the trial, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party . . ."

Rule 4020(c) provides in part: " . . . objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying".

question, which clearly falls under Rule 4005. The distinction is not crucial; the courts in discussing our question have seemed to treat it as arising under Rule 4007. Actually, Rule 4005 (c) limits the subjects of interrogatories to those permissible under Rule 4007, so that in practice the two rules must be considered together. However, Rule 4005 (c) contains a further limitation which we do regard as important; it restricts the use of answers to the extent allowed by Rule 4020. We will return to that in a moment.

(2) Rule 4007 (a), with which, as we have remarked, Rule 4005 must be construed, permits discovery as to: (a) identity and whereabouts of witnesses: (b) matters *not privileged;* (c) topics relevant to the subject of the suit; and (d) topics of substantial aid in preparing pleadings, preparing for trial, or trying the case.

(3) Rules 4005 and 4007 are both made expressly subject to the limitations of Rule 4011. We would not charge the defense with filing its interrogatory in bad faith, or causing unreasonable annoyance, or the other objections in Rule 4011; we restrict ourselves to the one relating to privileged matter.

(4) Rule 4020 (a) and (c), quoted in the footnote, would not permit the use of information as to defendant's insurance coverage at the trial unless the rules of evidence made such information admissible. While its inadmissibility at trial may not be a conclusive answer to our problem (conceivably, for instance inadmissible evidence still might aid in preparation of pleadings or preparation for trial), yet we consider it a factor to be regarded.

We add a further observation, not derivable from our rules themselves but nevertheless worthy of note: As pointed out in 5 Anderson Pa. Civ. Pract. §4001.5-4001-6, our rules at many points make innovations adopted from the Federal Rules of Civil Practice—

but at the same time important differences exist; the discovery allowed by our rules "is not as broad as that permitted by the Federal rules, and the present rules, although liberally construed, are subject to certain limitations not found in the federal practice". Hence Federal decisions on the topic, though often cited and often illuminating, may not always have the pertinence they might seem on their face to possess.

One highly material difference between the two systems of discovery is that the federal rules allow discovery of matter, even though it may be inadmissible at the trial, which might reasonably be likely to lead to divulgence of admissible material.[2]

Our Pennsylvania rules are devoid of that provision, and thus are more narrowly limited than are the Federal rules. The difference should be borne in mind in reading those federal decisions which open the door more widely than our own rules would seem to justify. In addition, it goes without saying that state rules in other jurisdictions are bound to differ from ours, and that such differences are likely to play a part in various state court rulings.

With the foregoing introduction, we turn to the consideration of the specific question confronting us in this case.

At the outset we observe: (a) that we have found no Pennsylvania appellate court ruling on the point; (b) that a few scattered lower court decisions have been cited to us; (c) that we have found three federal decisions in Pennsylvania, each with a different conclusion; (d) that throughout the nation the various

---

[2] Federal Rule of Civil Procedure 26(b) reads: "Unless otherwise ordered by the court . . . , the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . *It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence*". (Italics supplied.)

courts, both state and federal, range themselves on diametrically opposite sides of the question; but (e) that a marked preponderance of the states oppose requiring disclosure of insurance coverage prior to a judgment for the plaintiff.

To take the last observation first, we find listed in a Tennessee Law Review article,[3] among states which have ruled on the question 16 refusing to compel disclosure as against seven that have required it. Iowa amended its rules in 1957 to prohibit expressly any order for inspection of a liability policy unless the policy would be admissible in evidence: Iowa R.C.P. 141(a) (Supp. 1966). Contrarily, New Jersey added a 1961 rule amendment requiring disclosure of the "policy limits", solely for the purpose of evaluating the advisability of a settlement: N. J. Civ. Prac. Rule 4:16-2 (Supp. 1967). However, the New Jersey court construed the rule strictly, and held that nothing more than policy limits were to be disclosed, in Myers v. St. Francis Hospital, 91 N. J. Super. 377, 220 A. 2d 693 (App. Div. 1966).

It is understandable that a claimant's attorney would wish to ascertain the existence and nature of the defendant's insurance coverage. The vice in compelling disclosure of the coverage, even if only for the re-

---

[3] Comment, "Discovery of Insurance Coverage . . . " 35 Tennessee Law Review Page 36, Footnote 6 (1967). The sixteen states of the majority opposing disclosure are: Arizona, Connecticut, Delaware, Florida, Idaho, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New York, Oklahoma, South Dakota.

In addition, New Jersey (prior to enactment of New Jersey Civ. Prac. Rule 4:16-2) cited infra page 6 of this opinion was likewise opposed.

The seven states that have required disclosure are Alaska, California, Colorado, Illinois, Kentucky, Michigan, and (by rule) New Jersey.

Decisions evidencing both attitudes are cited in the Comment.

In the Federal courts there seems to be no discernible trend: See footnote 4 of the Comment.

stricted purpose of evaluating a settlement possibility, has been well expressed by the Supreme Court of Oklahoma in Carman v. Fishel, 418 P. 2d 963, 974 (1966) :

"We have in mind the natural, human temptation that would confront the plaintiff if she knew, for example, that the policy limits were $100,000 to 'evaluate' her claim for personal injuries for settlement discussions based on this amount, rather than upon a reasonable and careful analysis of her actual damages and compensable loss. Would the knowledge of how much money is available to pay plaintiff cause a departure from the real purpose of the suit, i.e. to fully and adequately compensate the plaintiff her damages?"

The contrary thought obviously is that disclosure of insurance may facilitate settlements and the disposal of cases without trial. We therefore face the question as to whether a procedural rule designed for discovery of "relevant" information that "will substantially aid in the preparation of the pleadings or the preparation or trial of the case" should be distorted to elicit data that might effect settlement and reduce court congestion. We are especially impressed with the answer given by the Minnesota Supreme Court in Jeppesen v. Swanson, 243 Minn. 547, 562, 68 N.W. 2d 649, 658 (1955) :

"Under the guise of liberal construction, we should not emasculate the rules by permitting something which never was intended or is not within the declared objects for which they were adopted. Neither should expedience or the desire to dispose of lawsuits without trial, however desirable that may be from the standpoint of relieving congested calendars, be permitted to cause us to lose sight of the limitations of the discovery rules or the boundaries beyond which we should not go. If, perchance, we have the power under the enabling act to extend the discovery rules to permit discovery of information desired for the sole purpose of encour-

aging or assisting in negotiations for settlement of tort claims, it would be far better to amend the rules so as to state what may and what may not be done in that field than to stretch the present discovery rules so as to accomplish something which the language of the rules does not permit".

We note that the Supreme Court of Idaho was "particularly impressed" with the reasoning of the Minnesota decision and has followed its lead, in Sanders v. Ayrhart, 89 Idaho 302, 309, 404 P. 2d 589, 592 (1965).

The contrary view, that disclosure of insurance coverage facilitates settlement and may be compelled, is exemplified by the U. S. District Court for the District of Columbia in Cook v. Welty, 253 F. Supp. 875, 877 (1966):

"It is not to be doubted that information concerning liability insurance coverage and its extent is conducive to fair negotiations and to just settlements. For example, in cases where injuries are very great, but insurance coverage is very low, and the defendant is otherwise impecunious, the plaintiff might well be led to accept a smaller settlement than the extent of the injuries would otherwise warrant. On the other hand, if in such an instance the limits of the insurance policy are high, there appears to be no fair reason for refraining to disclose such information to plaintiff's counsel".

It is manifest that the writer of that opinion in the use of those words was concentrating almost entirely on the case of low insurance coverage and was brushing aside casually the opposite situation.* No doubt the situations encountered by a judge are apt to influence his approach to this issue.

---

*The language in Cook where a settlement was sought to be effectuated, apparently assumes that counsel for a defendant (with low insurance coverage) would arbitrarily refuse to disclose the limits of the liability insurance to plaintiff's counsel.

We are led to assume that the situation in the District of Columbia differs from what we have found from our experience in Philadelphia.

Supporting the theory that disclosure of high limits of coverage hinders rather than supports settlements and adds to court congestion rather than reducing it, is the language of the Missouri Supreme Court, in State ex rel. Bush v. Elliott, 363 S.W. 2d 631, 637 (1963):

"We are not persuaded that requiring the disclosure of policy limits would lessen the number of pending cases. It seems just as likely that awareness of 'sizeable policies' might warp the judgment of an injured person and perhaps his counsel as to the real worth of the claim and keep alive a case that should be settled. Where court congestion exists, there are means by which it can be attacked directly with more assurance of success".

A similar view is found in the Montana Supreme Court in State ex rel. Herman v. Dist. Ct., 142 Mont. 139, 143-44, 381 P. 2d 799, 801 (1963):

"Arguments to the effect that . . . disclosures may facilitate settlement of the litigation do not appeal to us in that it is our belief that such disclosures are prone in many instances to give a plaintiff a strategic advantage over a defendant. Certainly our rules are not intended to be used for such a purpose".

In Kansas, where the state discovery statute is similar to the Federal rule allowing investigation into matters inadmissible in themselves but likely to lead to admissible evidence, the State Supreme Court nevertheless pointed out that the "purpose of the discovery statutes was to discover evidence," and held that the limits of a liability policy could not conceivably become evidence: Muck v. Claflin, 197 Kan. 594, 419 P. 2d 1017, 1021 (Kan. 1966).

In Nebraska, in the case of Mecke v. Bahr, 177 Neb.

584, 593, 129 N.W. 2d 573, 577 (1964), the State Supreme Court very pertinently declares:

"The subject matter is the charge of negligence against the defendant. . . . The answer to the propounded interrogatory would not be relevant to show negligence nor would it be reasonably calculated to lead to the discovery of admissible evidence showing negligence.[4] It is not the province of the courts to declare a matter of public policy by construing legislative language beyond its express terms. The establishment of public policy is the province of the Legislature, not the courts".

Reverting to the opposite view, we find that in a state having a financial responsibility law, in a case arising under the federal rules, a Tennessee District Court compelled the production of the defendant's liability policy: Brackett v. Woodall Food Products, Inc., 12 F. R. D. 4 (E.D. Tenn. 1951). In its opinion the court declared, id., at page 6:

"From the tenor and purpose of such legislation it is obvious that such insurance policies are definitely relevant to the subject matter of pending actions growing out of accidents covered by such policies, especially in view of the fact that this legislation apparently would require the defendant to disclose to the state authority the information concerning the insurance which plaintiffs seek, and this would be a matter of public record".

Pennsylvania, of course, has financial responsibility provisions in The Vehicle Code of April 29, 1959, P. L. 58, secs. 1401, et seq. as amended, 75 PS §1401, et seq. Section 1404 requires a deposit of security after accidents involving damages in excess of $100, subject to license suspension. Possession of a liability policy excuses the deposit. Section 1419 allows proof of financial responsibility by filing the insurance company's

---

[4] It will be observed again that the latter clause of the quotation relates to the Federal rule—which is *not* our Pennsylvania rule.

certificate that a policy is in effect. The section does not specifically require a showing of the amount of coverage. Section 1421, however, defining "motor vehicle liability policy", does set inter alia minimum insurance requirements. We are informed, however, that the state government does not consider insurance data public information.

The Brackett decision has been the subject of stringent criticism. In Missouri, which also has a financial responsibility law, the court disregarded the Brackett and similar holdings, and declared in State ex rel. Bush v. Elliott, 363 S.W. 2d 631, 635 (Mo. 1963) :[5]

"The statutes in question do not indicate any purpose or intent that the courts should require a disclosure of the amount of a motorist's liability insurance prior to the rendition of a judgment against him and the institution of proceedings to apply the insurance proceeds to the satisfaction of the judgment".

In Tennessee itself the courts have striven to evade the Brackett ruling. In McNelley v. Perry, 18 F. R. D. 360 (E.D. Tenn. 1955), the same district court, through another judge, sustained objections to an interrogatory as to insurance, distinguishing Brackett as "apparently" involving an insolvency situation; but little doubt exists that the judge simply refused to follow the earlier case.

In Hillman v. Penny, 29 F. R. D. 159 (E.D. Tenn. 1962), still another Eastern District judge again declined to force disclosure of insurance, and injected the unfounded distinction that Brackett involved punitive damages. In Hillman, decided under Federal Rule 26(b), the court said that the rule was ambiguous and "reasonableness should be applied in arriving at an interpretation", id. at page 160. Under that test, the court concluded (at page 161) that "the weight of reason is on the side of interpreting the rule as not

---

[5] This case is cited supra for other language.

contemplating or permitting the disclosure by discovery of insurance matters in the ordinary automobile accident case, where punitive damages are not involved and where the evidence would not be admissible upon trial nor reasonably lead to admissible evidence".

Finally, we see in Tennessee, still in the Eastern District, the case of Cooper v. Stender, 30 F.R.D. 389 (E.D. Tenn. 1962), which affirmed the McNelley ruling (supra), and adds with respect to the Tennessee financial responsibility statute (id. at page 393):

"It is said that these laws were passed to promote insurance coverage and to provide compensation for injured persons. Although these are worthy objectives, it is not believed that they are sufficient to justify this Court in ordering defendant to tell plaintiff the limits of his insurance policy so as to enable plaintiff's counsel to better decide whether the case should or should not be compromised".

If that is so under the broader Federal rules, it should be all the more so under our narrower Pennsylvania rules.

Two companion cases in Connecticut denying disclosure are worthy of mention: Verrastro v. Grecco, 21 Conn. Sup. 165, 149 A. 2d 703 (Super. Ct. 1958), and McKee v. Walker, 21 Conn. Sup. 168, 149 A. 2d 704 (Super. Ct. 1958). In the first, the court observed that under the State rules, described as more restrictive than the usual state rules, there must be a "showing that the disclosure sought . . . would be of assistance in the prosecution or defense of such action". The fact that disclosure might help settle cases did not make it pertinent to the prosecution or defense of the action, the court remarked.

In a recent New York case, Gold v. Jacobi, 52 Misc. 2d 491, 276 N.Y.S. 2d 309 (Spec. Term. Supreme Ct. 1966), the court pointed out that the state law adopted a "more restrictive approach to pretrial disclosure" than the Federal viewpoint, and ruled, despite the

State's financial responsibility law, that discovery of insurance could not be compelled for settlement purposes.

We have already stated that several State courts, though a minority, have taken the opposite view, and the Federal courts are fairly evenly divided on the subject. Some of the citations we have adduced illustrate the split of authority.

California, compelling disclosure, adopts a theory that an automobile policy creates a contractual relation with an injured third person: Superior Insurance Company v. Superior Court, 37 Cal. 2d 749, 235 P. 2d 833 (1951). A noteworthy feature in California is that a statute permits a judgment creditor in an accident case to sue the insurer directly upon his judgment: Cal. Ins. Code Sec. 11580 (b) (2) (West 1955).

Kentucky takes the view that since a plaintiff who obtains a judgment is entitled to the benefit of an insurance policy, he should equally be entitled to know about it before he secures his judgment: Maddox v. Grauman, 265 S.W. 2d 939 (Ky. App. 1954). We quote language from the opinion, id. at page 942, which has frequently been cited elsewhere:

"If the insurance question is relevant to the subject matter after the plaintiff prevails, why is it not relevant while the question pends? We believe it is".

The New York Supreme Court gave its answer in Gold v. Jacobi, supra, 52 Misc. 2d at page 493, 276 N.Y.S. 2d, at page 311. The court observed that the Maddox view "would then lead to the question why should not all defendants be examined before trial as to their property holdings and means? And what traditionally has been a post-judgment proceeding, would be transmuted into a pre-judgment proceeding. And what only has been allowed to one after he has become the established creditor of another party, would be granted before the liability of the latter has been es-

tablished. It strikes this court as an expedient which the ends sought to accomplish do not justify".

A leading decision often cited for disclosure is the Illinois case of People ex rel. Terry v. Fisher, 12 Ill. 2d 231, 145 N.E. 2d 588 (1957). The ruling was handed down under a state practice calling for discovery of information "relating to the merits of the matter in litigation". The court held that insurance facts do so relate "since they apprise injured plaintiffs of rights arising out of the accident, otherwise unknown, and which the public policy of this State protects, give counsel a realistic appraisal of his adversary and of the case he must prepare for, and afford a sound basis for the settlement of disputes". (12 Ill. 2d at 239).

This "appraisal" theory, despite the broader scope of the Federal rules, was rejected the following year by two Illinois Federal courts: Gallimore v. Dye, 21 F.R.D. 283 (E.D. Ill. 1958); Roembke v. Wisdom, 22 F.R.D. 197 (S.D. Ill. 1958).

Last of the foundations on which courts compelling disclosure have relied is the existence of a financial responsibility statute, which we have already referred to, but on which Colorado was the first State expressly to base its ruling: Lucas v. District Court, 140 Colo. 510, 345 P. 2d 1064 (1959). The court declared that the "Safety Responsibility Act" made the existence and extent of coverage "relevant to the subject matter involved in the pending action": 140 Colo. at pp. 516-17, 345 P. 2d at 1067. It is fair to mention, however, that two justices dissented. It is fair to observe also that under the usual State financial responsibility law, insurance is only one of several ways by which the statutory requirement of financial reliability can be satisfied: Comment, "Discovery of Insurance Coverage: Hazy Frontier of the Discovery Process" 35 Tenn. Law Rev. 35, 43 (1967).[6]

---

[6] The "Comment" has been cited previously in footnote 3.

Incidentally, the argument that if disclosure of insurance is compelled divulgence of other assets should likewise be compulsory has been attacked on the theory that insurance is unique and not at all like other assets: 2A Barron & Holtzoff, Federal Practice and Procedure, §647, 1 at 81 (Wright ed. 1961); People ex rel. Terry v. Fisher, 12 Ill. 2d 231, 238, 145 N.E. 588, 592 (1957).

The basic purpose of the pretrial discovery process set up by the Federal rules (Rules 26-37) — and equally of the various state rules, which in general are patterned more or less, and with various individual differences, upon the Federal rules—is thus stated in the oft-cited case of Hickman v. Taylor, 329 U.S. 495, 501 (1947):

"The various instruments for discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relevant to those issues".

The opinion adds, at page 507:

"The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise".

Finally, the opinion cautions (ibid.) that "discovery, like all matters of procedure, has ultimate and necessary boundaries".

The key boundary of course, is the provision in Federal Rule 26(b) that the matter sought to be discovered must be unprivileged and "relevant to the subject matter involved in the pending action".[7]

We have already observed that the Federal rule, broader than our own, permits inquiry into topics that are inadmissible at trial but likely to lead to the dis-

[7] See footnote 2.

covery of admissible evidence. Our pertinent Pennsylvania Rules, 4005, 4007 and 4011, taken in combination, omit the latter provision, and limit the scope of discovery considerably more narrowly to "any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case".[8]

Our rules thus require three elements for divulgence: (1) that the topic be unprivileged; (2) that it be relevant to the subject of the suit; and (3) that it be of aid in subsequent proceedings. We find no specific provision relating to its admissibility in evidence; we do find an indirect indication in Rule 4020(a)[9] that the content of a deposition may be offered against a party at the trial "so far as admissible under the rules of evidence".

That the fact of a defendant's insurance coverage is inadmissible at the trial of a trespass suit for personal injuries is the established law of Pennsylvania. Indeed, even a reference to the fact of insurance by plaintiff's attorney in a speech to the jury is such prejudicial error as to cause a verdict for the plaintiff to be set aside and a new trial ordered: Trimble v. Merloe, 413 Pa. 408 (1964). In addition, it would seem proper to regard the fact of insurance, like the extent of a defendant's assets in general, to be a privileged topic, at least until a judgment is rendered against him.

It is conceivable, nevertheless, that a court, despite those considerations, might declare insurance coverage both unprivileged and a proper subject for pretrial discovery, on the theory that it actually is relevant to the action and of aid in preparation for trial, even though it will not be admissible in evidence and cannot

---

[8] See footnote 1.

[9] See footnote 1.

possibly produce admissible evidence. We already know that a minority of States have reached the conclusion, whatever their reasoning, that discovery of insurance may be had before trial. In our own State, in the absence of an appellate ruling a few lower courts have reached divergent conclusions.

In 1958 Judge David E. Groshens of the Montgomery County Common Pleas Court ruled that a liability policy was not a proper subject of discovery and inspection in a trespass case: Howell v. Spatz, 14 D. & C. 2d 295 (1958). Said the court, 14 D. & C. 2d at pages 298-299:

"If this plaintiff may, under the Rules of Civil Procedure, 'search' the contents of defendants' private contract to help her decide upon a settlement figure[10] for her claim in trespass, she may, with equal propriety, 'search' the contents of their private safe deposit box for the same purpose.

"The contention of plaintiff in this case calls for a judicial construction which is not 'consistent with the Constitution of this Commonwealth,' because it would 'abridge' 'the substantive rights' of defendants to 'be secure in their . . . papers . . . from unreasonable searches . . . ' We cannot believe the Supreme Court intended that an ancient personal security should be abridged or impaired by judicial construction of judge-made rules.[11]

---

[10] The indicated motive is significant. Promoting settlements, and relieving court congestion thereby, are the reasons most commonly advanced for compelling disclosure of insurance coverage.

[11] The court is referring here to the fact that the Pennsylvania Supreme Court promulgated the rules, and that Rule 128, listing presumptions in construing the rules, declares in paragraph (c): "That the Supreme Court does not intend to violate the Constitution of the United States or of this Commonwealth." In the cited case, the plaintiff sought an actual inspection of defendants' policies under Rule 4009. The provision against unreasonable searches is found in the Sixth Amendment to the Federal Constitution and in article I, sec. 8, of the State Constitution.

"Until the General Assembly impresses automobile insurance policies with a public interest, the contents of such policies are not the lawful subject of discovery or inspection under court rules.

"Finally, the public liability and property damage policy is utterly without evidentiary or probative value, and is entirely irrelevant to the subject matter involved in this action. It cannot possibly 'substantially aid in the preparation of the pleadings or the preparation or trial of the case,' as required under rule 4007(a), nor can it lead to disclosure of information which might lead to pertinent facts".

Though actually the court refused to order an exhibition of the policies, we do not see how it can be argued that a statement of the contents of a policy differs from a physical production; and the fact is that the court's language clearly applies to both inspection and to other types of discovery. To say that a defendant who cannot constitutionally be forced to submit a paper to a search may nevertheless be compelled to state its contents is to circumvent the Constitution by a mere subterfuge.

Reaching the same result, though not on the same reasoning, is the earlier Butler County case of Covert v. Cingolani, 1 Butler 65 (1956). Refusing to order disclosure of insurance coverage or inspection of the policies, the court declared (report at page 66) :

"Plaintiff attorneys are always interested in whether or not the defendant is covered by liability insurance and the amounts of the coverage, that is, the limits of the policy. Attorneys for insurance carriers and adjusters for such companies guard well the secret.

"Certainly the matter of liability insurance is not pertinent to the issues before a Court and jury, namely: negligence, proximate cause, contributory negligence, nature and extent of injuries, loss of wages or earnings, and expenses incurred.

"In Kaplan v. Loev, 327 Pa. 465, the Court held: 'The fact that the defendant in an action of trespass is insured, is an irrelevant fact . . . ' "

A year ago Judge David L. Ullman of our own county reached the opposite conclusion and ordered that the defendant disclose whether he was insured and if so for how much: Waksman v. Walker, 44 D. & C. 2d 1 (C. P. Phila. 1968).

Plaintiff's attorney in the instant case has cited to us also a ruling by Judge Herbert S. Levin, of our County, on December 10 last, in the case of Haubert v. Gabryel, Common Pleas Court, June term, 1968, no. 978, which we do not find reported, ordering disclosure of insurance coverage.[12]

We approach the end of our search by taking up three District Court decisions in the equal number of our Pennsylvania Federal lower courts. Curiously, each yields a different viewpoint.

First, in our own Eastern District, former Chief Judge (now Senior Judge) William H. Kirkpatrick ruled against disclosure in McClure v. Boeger, 105 F. Supp. 612 (E.D. Pa. 1952), declaring at page 613:

"I can see certain advantages to the plaintiff in knowing the extent of the defendant's coverage in an accident case, at least in a case where the defendant is otherwise judgment proof and the policy is the plaintiff's only resort for a recovery. For example, it might help the plaintiff to determine whether or not to accept an offer of settlement or to decide how much expenditure of time and money by way of preparation the case justified. However, every argument that could be made

---

[12] Counsel informs us also that similar rulings were made last year by four other Philadelphia judges in these unreported cases: Januzelli v. Snyder, C. P. 7, June term, 1963, No. 7031; Tippett v. Thomas, C. P. 1, March term, 1967, No. 3271; Bell v. Hilltop Cab Company & Cooper, C. P., Dec. term 1967, no. 921; Chalphin v. Am-Chin, Inc. et al., C. P. 7, Dec. term, 1965, no. 734, and Heberlein v. Mooney et al., C. P. 6, June term, 1964, no. 6571.

in favor of requiring the disclosure could also be made in favor of compelling a defendant in any civil case, tort or contract, to furnish the plaintiff with full information as to his financial resources, and, in the case of an individual, as to the extent of his private fortune.

"Of course, the fact that the information would not be relevant and that the fact of liability insurance could not be introduced at the trial does not necessarily forbid discovery,[13] but whatever advantages the plaintiff might gain are not advantages which have anything to do with his presentation of his case at trial and do not lead to disclosure of the kind of information which is the objective of discovery procedure. I think that to grant this motion would be to unreasonably extend that procedure beyond its normal scope and would not be justified".

In the Middle District of our State the contrary result was reached by District Judge Frederick V. Follmer in Slomberg v. Pennabaker, 42 F.R.D. 8 (M.D. Pa. 1967). Judge Follmer first pointed out that in the Third Circuit a prospective juror might be asked in examination under voir dire questions about possible association with casualty insurance companies: Kiernan v. Van Schaik, 347 F. 2d 775 (C.A. 3rd 1965). The opinion proceeded, 42 F.R.D., pages 11-12:

"The primary argument that is advanced against discovery is that such discovery is not relevant to the issues of the case nor can it reasonably lead to discovery on any relevant issue . . . This contention has been answered by stating that if the insurance question is relevant after the plaintiff prevails, it is relevant while the action pends. . . .

"Another argument opposing discovery is that since a plaintiff cannot discover the assets of a defendant

---

[13] It should be remembered that the case arose under the Federal rules, which do not make admissibility at trial determinative.

before trial, he should not be allowed to discover the existence or limits of his automobile accident policy. The opposing argument is that the insurance policy is not in the same category as the other assets of a defendant. . . .

"The final argument is that disclosure of high limits will retard settlements. It is interesting to note that the cases allowing discovery rely on the opposite theory, i.e., that disclosure of low limits will lead to settlements and ease court congestion. It would appear that the stronger argument here is that which permits discovery. . . .

"Moreover, in states which have laws similar to the Pennsylvania Motor Vehicle Safety Responsibility Act, 75 P.S. §1401 et seq., the argument is that these provisions were written to benefit an injured person and that disclosure of the policy should be allowed".

Lastly, in the years between those two opposite decisions came one in our State's Western District advancing a middle-of-the-road proposal: Rosenberger v. Vallejo, 30 F.R.D. 352 (W.D. Pa. 1962). In the opinion of the court, Chief Judge Wallace S. Gourley cited Federal and State authorities' going both ways, and concluded, report at page 353:

"Upon an evaluation of the authorities which reflect both points of view, I am of the belief that merit exists on both sides of the argument. It is my considered judgment that no generalized, sweeping conclusion should be enunciated and that each case must necessarily be governed on its own merits. Where, for example, a circumstance exists where liability is admitted and damages are most substantial, it would appear that a duty would exist upon a defendant to disclose the amount of insurance where such insurance is limited in amount and that such disclosure should be made at the very inception of the proceeding.

"On the other hand, where liability is hotly contested and said determination is most conjectural, I

see no justification for disclosing insurance coverage in the early discovery phases of preparation for trial".

In the case itself, Judge Gourley found liability "highly disputed" and an uncertainty to exist whether the operator of the car in which the plaintiff was riding or the driver of the car with which it collided, or both, were liable. The opinion continued, ibid.:

"It would seem, therefore, that in the present status of the proceeding the Court is unable to conceive of any assistance that a disclosure of insurance coverage might serve toward the amicable disposition of these actions. The court, however, can well visualize that as the case develops and the liability phase becomes more definite, that a disclosure of insurance coverage might effectuate a prompt settlement.

"An appropriate order is entered".

Judge Gourley's compromise suggestion has been endorsed, by way of dictum, in a recent Michigan federal decision, which sets forth an excellent survey of the topic: Pruitt v. M/V Patignies, 42 F.R.D. 2d 647 (E.D. Mich. 1967). Taking up one by one the various contentions advanced for disclosure, Chief Judge Ralph M. Freeman rejected them all and declined to compel production of an insurance policy. We quote the court's answer to the argument that disclosure promotes settlement, report at pages 651-652:

"An experienced lawyer can appreciate that if coverage is determined to be less than was first thought, a vindictive plaintiff would force a trial largely with the hope of hurting a defendant, as much as possible.[14] More important, it is not difficult to envision the case of the average plaintiff who, upon discovering that his defendant has more extensive insurance protection than anticipated, refuses to settle for the amount upon which he once would have been willing to agree, with the result that negotiations are

---

[14] We do not subscribe to the thought here expressed.

at least prolonged if not actually terminated because the newer figure is higher than that representing what the insurer honestly feels is the value of the claim.

"Even if policy considerations rather than the dictates of Rule 26 (b) were controlling so that there were room for emotional reactions to play a part in the decision of a question of this nature, an effort to balance the competing interests would suggest that disclosure be compelled only in the unusual situation where liability is admitted and a victim's claim seems to be both substantial and in excess of a defendant's apparent worth apart from his insurance coverage. See Rosenberger v. Vallejo, 30 F.R.D. 352 (W.D. Pa. 1962)".

We have discussed our problem at considerable length because of its frequent occurrence in trespass actions and because of the sharp controversy surrounding its solution. We have seen highly respectable authority for requiring disclosure. We have seen a strong preponderance of authority for denying it. Finally, we have seen a proposed middle ground, the flexible approach of Chief Judge Gourley in our own state, referred to with approval by Chief Judge Freeman in Michigan.

On the one hand, the insistence on discovery of insurance stems basically from the understandable wish of the plaintiff's attorney in a negligence case to evaluate his client's claim at the outset and to decide how much effort and expense it is worth his while to devote to its preparation. He does not ordinarily disclose that desire to the court in arguing for discovery; the contention presented is that discovery of insurance will promote settlement and possibly take the case from the trial list. The court, concerned with the ever-present "backlog", is impressed, and often adds to the basic motive other arguments for discovery.

On the other hand, arguments against discovery are both practical and logical. Discovery is likely to bring

forth the existence of the high insurance limits which may tempt the plaintiff to exaggerate his claim.[15] That, to our mind, is the prime reason why defense counsel object so strenuously to answering interrogatories on the subject. Our own experience in conducting settlement conferences leads us to conclude that forced disclosure of insurance information is more likely to prolong or impede settlements and to increase calendar congestion rather than to encourage or facilitate the settlement disposition of cases. The evils of compulsory discovery of insurance thus definitely exceed the benefits.

From the standpoint of logic, the arguments are overwhelmingly against discovery. The fact of insurance is inadmissible in evidence. Even under the Federal rules, broader than our own, it cannot possibly lead to the eliciting of admissible evidence. Nor can it be deemed relevant to the issues in the case, except by stretching "relevant" and "issues" far beyond their inherent meanings. Nor is it necessary to the drafting of pleadings, or to preparation for trial, or to the conducting of the trial; indeed, at the trial its disclosure to a jury would cause a mistrial. Until the rendition of a judgment for the plaintiff, it is privileged information, just as are the existence and extent of other assets. To say that it is different is to beg the question; real property is "different" from personalty, but the possession of both undoubtedly is privileged information. The constitutional provision against unreasonable searches of private papers should rationally apply just as much to a forced disclosure of their contents as to an actual physical inspection; otherwise we are circumventing an ancient prohibition by a quibble. All those considerations impel us irresistibly to the conclusion

---

[15] We hasten to add that we do not attribute any improper motive to counsel for plaintiff in the instant case. We accept his good faith; but good faith alone is not controlling, and our decision must be based on pertinent general considerations.

that in logic a pretrial discovery of insurance is unjustified.

We accord due respect to the judges, including those in our own state, who have reached a contrary conclusion. We have read with particular care the very comprehensive opinion of Judge Ullman of our own county, but we find ourselves unable to agree with his reasoning and findings, well stated as they are. We also have accorded especial weight to the rulings of our other Philadelphia colleagues cited above. But their view does not bind us, and we are convinced that in interpreting our discovery rules, logic runs overwhelmingly in the single direction against disclosure of insurance, and logic should govern. The rules are clear and unambiguous; their purpose is completely definite; it is to yield discovery of relevant and unprivileged information; it most certainly is not to promote settlements. To use the rules for the fostering of compromises is to wrench them out of semblance to their intent. Encouraging settlements undoubtedly is a worthy enterprise, and one to which we subscribe wholeheartedly; indeed, it is one in which we have taken and are taking a measurable part; but there are fully proper ways to conduct that enterprise, and twisting the discovery rules is not one of them. If it be the wish of the courts in any jurisdiction that insurance coverage become a subject of discovery, they should take the direct step of amending the rules clearly and specifically to that end. They should not seek to accomplish their wish by indirection and by an illogical misapplication of the existing discovery rules.

If the rules were to be amended, our own inclination favors the flexible approach of Chief Judge Gourley in the Rosenberger case cited above, to give the court jurisdiction in determining whether the clearness of liability and substantial extent of injuries or possibly other factors, warrant a forced disclosure of insurance

coverage in the particular case. The basic viewpoint, however, should remain as in our judgment it now is, that insurance is not a proper subject of pretrial discovery.

In the instant case it is our considered conclusion that our present discovery rules do not legally permit the court to compel the disclosure sought by the plaintiff. We therefore enter the following:

## ORDER

And now, February 14, 1969, it is ordered, adjudged and decreed that the objection of defendant, William E. Watkins, Jr., to the additional interrogatory 1(a) (b) and (c) of plaintiff Anna Coxe Toogood be and hereby is sustained.